## Richmond

SECURITY BANK AND TRUST COMPANY, ET AL. v. SCHOOLFIELD BANK AND TRUST COMPANY, ET AL.

January 15, 1968.

Record No. 6667.

Present, All the Justices.

C. Stuart Wheatley; David J. Mays (Rutledge C. Clement; Clement, Wheatley, Winston & Craig; Mays, Valentine, Davenport & Moore, on brief), for appellants.

George B. Anderson; Waldo G. Miles; D. Gardiner Tyler, As-

*sistant Attorney General,* (*William E. Anderson; Robert Y. Button, Attorney General,* on brief), for appellees.

I'ANSON, J., delivered the opinion of the court.

On June 20, 1966, Schoolfield Bank and Trust Company, hereinafter called Schoolfield, filed an application with the State Corporation Commission, pursuant to the provisions of § 6.1-39(a), Code of 1950, as amended, 1966 Repl. Vol., for authority to establish a branch at the northeast corner of Patton and Ridge streets in the city of Danville.

Security Bank and Trust Company, Virginia Bank and Trust Company, First State Bank, Mutual Savings and Loan Association, Peoples Industrial Loan Corporation, The First National Bank of Danville, and American National Bank and Trust Company of Danville, hereinafter called intervenors, opposed the application.

Evidence was heard on the application, and, for the reasons stated in the written opinion of Commissioner Dillon, concurred in by Commissioner Hooker, the Commission found as a fact that public convenience and necessity will be served by granting Schoolfield's application to establish a branch at the proposed location and entered its order accordingly. Commissioner Catterall dissented on the ground that "There is no evidence in this case that the general public has the slightest need for another banking office in downtown Danville."

All the intervenors except the First Federal Savings and Loan Association of Danville are here on an appeal of right from the Commission's order authorizing Schoolfield to establish the proposed branch. They contend that the Commission's finding is not supported by the evidence.

The Commission's finding is based on the following evidence: Schoolfield, an industrial loan company until it became a bank in 1957, is located on West Main street in the city of Danville, two and one-half miles from the downtown area, and is across the street from the main entrance to Dan River Mills, Inc. Seventy-five percent of Danville's population resides north of Schoolfield. The bank has enjoyed a rapid growth. Its lobby is so crowded at times that customers have to wait in line as long as thirty minutes before being served. The bank has no parking area of its own, no drive-in facilities, and its night depository service is inadequate because of lack of parking space. There is no room for expansion at its present location.

Schoolfield's proximity to the main entrance of Dan River Mills has contributed to its growth, but Dan River's employees account for only 25 percent of its total deposits. The bank has 2,313 checking accounts, of which 139 are commercial and 2,174 are personal. Of the commercial accounts, 71.94 percent of the depositors are located nearer the proposed branch, and 54.59 percent of the personal account depositors reside closer to the proposed branch. In terms of dollar volume, 55.15 percent of the commercial depositors and 58.76 percent of the personal depositors are nearer to the proposed branch than to Schoolfield's present location.

The proposed location of Schoolfield's branch at the corner of Patton and Ridge streets is a prime location, one block from the Municipal Building and the United States Post Office. A large new Sears, Roebuck store is within one-half block of the site, and many other business establishments are in the area. The main offices of all the intervenors are located within approximately 1,000 feet of Schoolfield's proposed site.

According to a 1965 survey, 7,637 vehicles passed along Ridge street by the proposed site during a 24-hour period. The master plan for the city of Danville calls for the widening of Ridge street, which already has four lanes between Main and Patton streets, to a four-lane street from Patton to the Corridor Industrial Park, where several nationally known companies are located. It was estimated that these companies will eventually employ approximately 2,500 persons.

Schoolfield's branch would be about the same distance from the industrial park as the Wilson-Ridge street branch of The First National Bank, one of the intervenors. No other bank or branch would be closer to the industrial park.

There was testimony concerning the rapid growth of Danville, which is the trade center for a large surrounding area; the increase in wealth and earning capacity of the city's residents; and the increase in demand deposits in all the Danville banks over the period from January through September, 1966, as compared with the same period in 1965.

All but First State Bank, one of the intervenors, and Virginia National Bank, which did not intervene, have drive-in facilities at or near their main offices or at one or more of their branches. Several of the intervenors have recently either added to their facilities or modernized their main offices. Financial statements introduced in evi-

dence by the intervenors show that they are in excellent condition and are enjoying a healthy growth.

The main thrust of the intervenor's argument is that there is no evidence to support the Commission's finding that "public convenience and necessity will be served" by granting Schoolfield's application, because the downtown area of Danville is adequately served by the existing banking facilities and there is no public need for another bank in the area. They concede, however, that Schoolfield's present facilities are inadequate and that it needs additional facilities, but contend that the branch should not be established on a downtown site.

The pertinent part of Code § 6.1-39(a) provides that the Commission, "when satisfied that public convenience and necessity will thereby be served, may authorize [State] banks * * * to establish branches * * * ."

[1] Under § 156(f) of the Constitution of Virginia, the order of the Commission authorizing Schoolfield to establish a branch at the proposed location must be regarded by us as "prima facie just, reasonable and correct." We have many times said that such an order will not be disturbed by us "unless it is contrary to the evidence or without evidence to support it." *Users Association* v. *W&OD Railroad*, 208 Va. 1, 5, 7, 155 S. E. 2d 322, 324, 326 (1967); *Gas Corp.* v. *Gas Light Co.*, 201 Va. 370, 375, 376, 111 S. E. 2d 439, 443 (1959).

[2] Thus the scope of our review on this appeal is to determine whether the evidence supports the finding of the Commission that public convenience and necessity will be served by allowing the branch to be established at the proposed location. The intervenors concede that the phrase "public convenience and necessity" used in the statute means a public need and not an absolute or indispensable necessity. It is clear that the legislature, in providing regulations for control of the banking business, was primarily concerned with the creation and maintenance of sound and adequate banking facilities and protection of the public from the evils of unsound and imprudent banking. Where, or how, or under what circumstances the public convenience will be served by the establishment of a branch bank is a factual question addressed to the sound discretion of the Commission. Thus it was the duty of the Commission to determine from the evidence whether the establishment and operation of the proposed branch bank under existing circumstances and conditions would be consistent with, and tend to secure for the general public, the purposes

of the law. See, *Wall* v. *Fenner*, 76 S. D. 252, 259, 76 N. W. 2d 722, 726 (1956), interpreting a similar statute.

While the adequacy of existing bank facilities may be considered in determining whether public convenience and necessity will be served, this does not preclude the Commission from authorizing Schoolfield's proposed branch when there has been a showing of a public need and such authorization will not jeopardize the financial soundness of already existing banks and other financial institutions in the downtown area. If such were not the case, the statute would tend to deter competition and promote a monopoly. We are satisfied that this could not have been the intent of the legislature.

[3] The evidence shows, and in fact the intervenors conceded in oral argument before us, that the financial stability of the other banks and financial institutions in Danville would not be jeopardized by the establishment of Schoolfield's branch on the site proposed. The expansion and renovation programs in the downtown area by some of the intervenors indicate the need of keeping pace with the growing community.

The following quotation from Commissioner Dillon's opinion shows that the Commission gave careful consideration to the various factors pertinent to a decision of the issues before it:

"* * * In view of its peculiar geographical location the most logical place for Schoolfield to put a branch is in the downtown area, just as the downtown banks, in many instances, have placed their branches in areas away from downtown, including the vicinity of Schoolfield's banking office. The establishment by Schoolfield of a branch at Ridge and Patton Streets will at least reduce the competitive disadvantage in which it finds itself. This will benefit both the existing customers of Schoolfield and the public generally without injuring the strong banks and financial institutions already located in the downtown area."

We are of opinion that there is ample evidence to support the factual findings and the conclusion of the Commission, and under the provisions of § 156(f) of the Constitution of Virginia and well established principles of law, we cannot disturb the decision. Hence the order of the Commission is

*Affirmed.*