## Richmond

### MUTUAL SAVINGS & LOAN ASSOCIATION OF DANVILLE v. COMMONWEALTH OF VIRGINIA.

January 17, 1972.

Record No. 7650.

Present, All the Justices.

*Fred G. Pollard* (*Williams, Mullen & Christian*, on brief), for appellant.

No brief or argument for appellee.

SNEAD, C.J., delivered the opinion of the court.

Mutual Savings and Loan Association of Danville filed an application on May 14, 1970, with the State Corporation Commission requesting that it be authorized to establish a branch office in Col-

linsville. A hearing on the application was held on October 8, 1970. Piedmont Trust Bank, First Federal Savings and Loan Association of Martinsville, Imperial Savings and Loan Association, and First National Bank of Bassett intervened in opposition to Mutual's application. None of the intervenors filed any pleadings in the case.

At the conclusion of Mutual's evidence and after two witnesses had testified on behalf of the intervenors, the Commission, speaking through one of its members, stated that it did not wish to hear from other witnesses for the intervenors, and that from the evidence presented "there couldn't be any necessity for another office in the area." Mutual offered no rebuttal evidence.

On October 9, 1970, an order was entered denying the application on the ground that "there is no public need for additional savings and loan facilities in the community * * *." Commissioner Catterall rendered a written opinion on November 23, in which Chairman Hooker and Commissioner Dillon concurred.

Mutual is here on appeal as a matter of right. The intervenors did not make a written request to be given notice of the appeal. Since they did not file any pleadings in the case or request notification of the appeal, Mutual was not required to give them such notice. Rule 5:1 § 13 of Rules of Court. The intervenors have not taken the necessary steps to become parties to this appeal, and neither the Attorney General nor counsel for the Commission filed briefs in this Court regarding Mutual's appeal.

Code § 6.1-171 provides in part: "* * * [T]he Commission, when satisfied that the public convenience and necessity will be served, may authorize an association to establish a branch or branches * * *." The phrase "public convenience and necessity" as used in this statute means a public need and not an absolute or indispensable necessity. *Security Bank* v. *Schoolfield Bank*, 208 Va. 458, 461, 158 S.E.2d 743, 745 (1968). In that case we also said:

> "While the adequacy of existing bank facilities may be considered in determining whether public convenience and necessity will be served, this does not preclude the Commission from authorizing Schoolfield's proposed branch when there has been a showing of a public need and such authorization will not jeopardize the financial soundness of already existing banks and other financial institutions in the downtown area. If such were not the case, the statute would tend to deter competition and promote a monopoly.

We are satisfied that this could not have been the intent of the legislature." 208 Va. at 462, 158 S.E.2d at 745-46.

In the written opinion finding that public convenience and necessity would not be served by authorizing Mutual to establish the proposed branch, Commissioner Catterall correctly stated that the Commission's discretion in authorizing branches is not an "absolute discretion," and that the Commission, "like all triers of fact must act within the bounds of reason." It is also well settled that this Court will not disturb the Commission's finding of fact unless it is contrary to the evidence or without evidence to support it.

In this appeal, the sole question we must decide is whether the Commission's denial of Mutual's application for a branch office is contrary to the evidence or without evidence to support it.

The evidence revealed the following facts: Mutual has its main office in Danville and its deposits are insured. The association obtained an option on land located in Collinsville at the intersection of Sunset Road and U. S. Highway No. 220 for the branch office. The land is situated between two shopping centers, and a traffic count made in May, 1970 showed that about 18,000 vehicles passed the intersection each day. The proposed branch would represent an investment of $140,000 and would have, among other things, a drive-in window, customer parking, an approved vault, and safe deposit boxes.

In the Martinsville-Collinsville area, there are twenty-two existing financial offices. Seven of these offices are those of credit unions, which are not permitted to do business with the general public. There are three main bank offices and ten branch bank offices. First Federal Savings and Loan Association of Martinsville and Imperial Savings and Loan Association each has one office. First Federal is the only insured savings and loan association in the area. The existing banks and savings and loan associations have offices that range from less than one mile to about six miles from the proposed location of the branch.

Due to a lack of available mortgage money, area institutions have imported mortgage money since World War II. As pointed out in the written opinion, the supply of mortgage money showed no sign of catching up with demand. In September, 1969, Piedmont Trust requested Mutual to make conventional home loans in the area. Other banks also began soliciting Mutual and in a thirteen month period

Mutual had made or was committed to make fifty-six loans totaling approximately $2,000,000. Mutual has available funds to lend and can make loans up to 90% of appraised value. However, it is necessary for persons in the Collinsville area who obtain loans from Mutual to make two trips to Danville, which is about fifty miles round trip. One trip is required to make application for the loan and the other is required to close it. First Federal Savings and Loan of Danville also began making loans to area residents shortly after Mutual made its initial loans.

The evidence further showed that the economy of the area was rapidly growing. Population, employment, income and retail sales were increasing at a faster rate than in the State as a whole. Bank deposits increased about 90% between 1960 and 1968. Savings deposits alone in banks had increased during the same period about 122%. Yet, Mutual's evidence showed that the deposits in savings and loan associations were approximately eight million dollars less than they should have been.

Mutual had savings deposits of about $75,000 from area depositors and, with a branch office, could expect to increase those deposits. It pays a higher rate of interest on savings than is presently offered in the area. There was no evidence that an additional savings and loan branch would adversely affect the financial soundness of the existing institutions.

Based on these uncontradicted facts, we are of opinion that the Commission's denial of Mutual's application was contrary to the evidence. In our view, the evidence presents a stronger case for a branch office than *Security Bank* v. *Schoolfield Bank, supra,* where we affirmed the judgment of the Commission authorizing Schoolfield Bank to establish a branch in the city of Danville.

■ The record shows that the Commission decided this case before all the intervenors' witnesses had testified. However, none of the intervenors took the necessary steps to argue before us that in event the case is reversed, it should be remanded for a further hearing. We, therefore, reverse the Commission's order denying Mutual's application and remand the case with direction that the application be approved.

*Reversed and remanded.*