## Richmond

### PENINSULA CRUISE, INC. V. STATE CORPORATION COMMISSION, ET AL.

November 23, 1977.

Record No. 770043.

Present: All the Justices.

*James E. Bradberry* (*Moore, Weaver, Moore & Bradberry,* on brief), for appellant.

*Wayne N. Smith* (*Lewis S. Minter*, on brief), for appellee.

No brief or argument for Walter M. McDowell, t/a, etc., appellee.

COCHRAN, J., delivered the opinion of the Court.

This appeal is a sequel to *Harbor Cruises* v. *Commonwealth*, 217 Va. 458, 230 S.E.2d 248 (1976), where we held that a sight-seeing carrier by boat under the "Grandfather Clause" of Code § 56-457.9 could operate from Willoughby Bay Marina in the City of Norfolk without obtaining a certificate of public convenience and necessity from the State Corporation Commission.

Peninsula Cruise, Inc., with the same officers and stockholders as Harbor Cruises, Inc., the successful appellant in *Harbor Cruises, supra*, applied to the Commission for a certificate of public convenience and necessity to operate boat tours of the Hampton Roads area originating at the Newport News Small Boat Harbor but also picking up and discharging passengers at Willoughby Bay Marina at Willoughby Spit in the Ocean View section of Norfolk. A hearing was conducted by the Commission on December 15, 1975, and January 2, 1976, at which the intervener, Walter M. McDowell, trading as Norfolk-Portsmouth Harbor Tours, opposed the application insofar as it sought authority to use the Willoughby Bay departure point. On August 27, 1976, Peninsula filed a motion to reopen the hearing to permit the introduction of evidence concerning sight-seeing tours operated during the summer of 1976 by Harbor Cruises, Inc., over the identical routes for which the certificate was sought.

On September 14, 1976, prior to our decision in *Harbor Cruises*, the Commission entered an order granting Peninsula a certificate to operate from the Newport News Small Boat Harbor upon dissolution of Harbor Cruises, Inc., and, with Commissioner Shannon dissenting, denying the application for a certificate for its proposed tours departing from Willoughby Bay. Peninsula's motion to reopen the hearing was denied. Peninsula filed a motion to reconsider the order but the record shows no action taken by the Commission thereon. On January 3, 1977, the opinion of the Commission was filed in support of its

order of September 14, 1976; no dissenting opinion was filed. The opinion pointed out, *inter alia,* that, as Code § 56-457.2 permits only one point of origin to be designated in a certificate of public convenience and necessity issued to a sight-seeing carrier by boat, Peninsula's dual application was considered as two separate applications.

In its appeal of right Peninsula first argues that the ruling of the Commission on the application for a certificate for the route originating at Willoughby Bay was contrary to the law [1] and the evidence. Recognizing the general rule that a decision of the Commission on an application for a certificate of public convenience and necessity is regarded on appeal as prima facie correct, *Bralley-Willett* v. *Holtzman Oil,* 216 Va. 888, 890-91, 223 S.E.2d 892, 895 (1976), Peninsula nevertheless insists that in the present case the ruling is contrary to the evidence and without evidence to support it.

The evidence adduced in support of the application comprised, in addition to the testimony given by the principals of Peninsula, testimony of a representative of the Omni International Hotel in Norfolk, of the Cultural Affairs Coordinator of the City of Norfolk, and of a member of the Ocean View Kiwanis Club, a resolution approved by that club, and a letter from the City Manager of the City of Norfolk. This evidence tended to show that the tourist business of the Norfolk area would be promoted if the application were approved and additional recreational facilities were thereby made available to tourists. Timothy L. Jones, the Cultural Affairs Coordinator, testified that officials of the City of Norfolk were studying closely the development of the

---

[1] Code § 56-457.3 provides as follows:

"The public convenience and necessity to be served by this chapter is to encourage sightseers to visit and view points of interest in Virginia by providing economical, comfortable and convenient transportation, and in the issuance of certificates the Commission shall consider all facts bearing on that purpose, including existing means of transportation and the character of the applicant and the kind of equipment he proposes to use. The Commission shall issue no more certificates than the public convenience and necessity require, and shall place such restrictions upon such certificates as may be reasonably necessary to protect any existing sight-seeing carrier by boat or special or charter parties by boat operating over the same or substantially the same route or routes under a certificate issued by the Commission, but shall not deny a certificate solely on the ground that the applicant will operate over the same route or substantially the same route or part of the route of an existing sight-seeing carrier by boat or special or charter parties by boat."

Ocean View community and they believed that a harbor tour emanating from that point would be beneficial to the area.

The evidence in opposition to the application consisted of the testimony of the intervener, given in person and by affidavit, and that of an expert witness. McDowell, the intervener, testified that if the application were approved he would suffer economic loss in the operation of his harbor tours because of the competition provided by Peninsula. However, although Harbor Cruises, Inc., operated tours from Willoughby Bay throughout the summer of 1975, McDowell conceded that his own business in 1975 increased by 24% over that of the preceding year. Nevertheless, he believed that his business would have increased substantially more if he had not had the Willoughby Bay competition.

Dr. Louis H. Henry, Associate Professor of Economics at Old Dominion University, testified as an expert witness for McDowell. Based upon his analysis of McDowell's records and of the tourist market in the Willoughby Spit area, Henry was of the opinion that Peninsula could only expect to average five passengers per trip from Willoughby Bay Marina. Nevertheless, the record shows that Harbor Cruises averaged slightly more than five passengers per trip from this point of origin in 1975, the first year of operation on this route. Henry's estimate of passengers was predicated on the 350 hotel and motel rooms available in the Willoughby Spit area, but the evidence showed that there were 1,512 rooms in the entire Ocean View area, of which Willoughby Spit is a part, and that there was a 98% occupancy rate during the three summer months.

Henry testified that, based upon his study of McDowell's records, the capacity of McDowell's boat operating from a location in downtown Norfolk was enough to meet the demand in the Norfolk-Portsmouth-Virginia Beach area for harbor tours. He conceded that in studying the demand for a harbor tour originating at Willoughby Bay he only considered the Willoughby Spit market area, and that he did not take into consideration the effect of completion of the second Hampton Roads bridge-tunnel, then under construction adjacent to the Willoughby Bay Marina, and removal of toll charges on the bridge-tunnels. He also acknowledged that he did not consider the fact that McDowell's tours spent most of their time in the

Elizabeth River and used the Hampton Roads waters, which Peninsula sought to use, only 22% of the time.

In its opinion the Commission stated that the intervener, operating tours from a point reasonably accessible from Virginia Beach and Ocean View, was operating at less than full capacity, and that the record did not support Peninsula's contention that the public convenience and necessity required an additional carrier operating from Willoughby Spit. The opinion noted that a survey of passengers carried by McDowell during one week showed that 44.9% were staying in Virginia Beach and Ocean View; that a witness for Peninsula had conceded that it took approximately 25 minutes to reach downtown Norfolk from Virginia Beach, as opposed to 45 minutes to reach Willoughby Spit from Virginia Beach; and that Harbor Cruises, Inc., had faced a problem of excess boat capacity and had occasionally cancelled tours from Willoughby Spit for lack of passengers. There was other evidence, not mentioned in the opinion, that the recent extension of Interstate Route 64 through the area had reduced the driving time from Virginia Beach to Willoughby Spit to approximately the same as that from Virginia Beach to downtown Norfolk.

Henry's testimony was mentioned in the opinion only as showing the number of passengers carried by McDowell in 1975 from downtown Norfolk and Portsmouth, and as showing that McDowell usually operated his boat at less than capacity. It is apparent that the ruling of the Commission was based upon the demand for McDowell's operation from downtown Norfolk rather than upon demand for service at Willoughby Bay. This overlooks the fact that Harbor Cruises, Inc., was at the same time conducting tours successfully, although not always at capacity, from Willoughby Bay. Elimination of his Willoughby Bay competition might enable McDowell to operate in excess of capacity or it might result in little or no increase in the number of passengers using his downtown point of departure. But denial of Peninsula's application will not necessarily eliminate McDowell's Willoughby Bay competition. It was asserted by Peninsula's counsel in oral argument without contradiction that Peninsula could decline to accept the Commission's order of September 14, 1976, granting it a certificate for the Newport News operation conditioned on dissolution of Harbor Cruises, Inc., and its principals could continue to operate tours by Harbor

Cruises, Inc., under its "grandfather" rights, from both Newport News and Willoughby Bay.

After a careful review of the record, we conclude that the Commission's denial of Peninsula's application for a certificate of public convenience and necessity to operate boat tours from Willoughby Bay as a point of origin is contrary to the evidence. The application, if granted, would merely substitute a certified operation, subject to Commission supervision and regulation, for a "grandfathered" operation independent of Commission jurisdiction. The evidence shows that the "grandfathered" operation serves a demonstrated public demand in the Ocean View area and has not prevented its competitor in downtown Norfolk from operating with increasing profitability.

Although we accord great weight to findings of the Commission, when we find that such findings are contrary to the evidence we reverse and remand with directions. *See Mutual Savings v. Commonwealth*, 212 Va. 557, 186 S.E.2d 13 (1972). Accordingly, we reverse the Commission's order of September 14, 1976, denying Peninsula's application to operate from Willoughby Bay and we direct that the application be approved, but such approval may be conditioned upon dissolution of Harbor Cruises, Inc.

*Reversed and remanded.*