## Richmond

FARMERS AND MERCHANTS NATIONAL BANK, ETC. v. COMMONWEALTH
OF VIRGINIA, ET AL.

November 27, 1972.

Record No. 7997.

Present, Snead, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Flournoy L. Largent, Jr. (Largent, Anderson & Larrick*, on brief),
for appellant.

*James M. Thomson*, for appellees.

CARRICO, J., delivered the opinion of the court.

Farmers and Merchants National Bank, Winchester, Virginia, is
here upon an appeal of right from a final order of the State Corpora-
tion Commission granting Virginia Savings and Loan Association
authority to establish a branch office in Winchester. Farmers and
Merchants intervened in the proceeding before the Commission and
opposed approval of the proposed branch. Its sole contention here

is that the evidence does not support the Commission's finding that public convenience and necessity would be served by establishment of the branch.

The evidence shows that Virginia Savings commenced business in 1960. Its main office is in Fredericksburg, and it has six branch offices, located in Hanover, Spotsylvania, Fairfax, and Arlington counties. An additional branch has been authorized for Springfield in Fairfax County, but it has not yet opened.

Virginia Savings began business with assets of $375,000. By December 31, 1971, this figure had grown to $26,467,890. On the latter date, the Association had 8084 savings accounts totaling more than $22,000,000 in deposits. Total reserves were in excess of $1,100,000.

The proposed branch would be located on the east side of U.S. Route No. 11, approximately 2 1/2 miles south of the central business district of Winchester, in a busy shopping area. Adequate capital and management are available for operation of the branch.

The city of Winchester and the county of Frederick, which surrounds the city, constitute the primary trade area, consisting of 433 square miles, from which the financial institutions in Winchester draw their business. The population of the two jurisdictions totaled 43,536 in 1970, up 17.5% over 1960, a growth rate in excess of the national average. However, an estimate by the local chamber of commerce indicated a decline of 1% in population between 1966 and 1970.

Housing units in the county-city area increased on an average of 305 per year in the decade 1960 to 1970. In 1971, 444 new units were added.

Total personal income in the area increased from $65,934,000 in 1960 to $102,895,000 in 1967, or 56%. In the same period, per capita income increased from $1491 to $2157, or 44.7%, in the county and from $2199 to $2923, or 32.9%, in the city.

The number of business establishments in the area increased from 487 in 1967 to 540 in 1971. The entry into the area of numerous "modest-size manufacturing plants" had strengthened the economy. Total wages paid in the period 1967 to 1971 increased from $50,-026,557 to $79,728,262, or 59.4%. The average wage per employee increased during the same period from $5043 to $6686, or 32.6%, in the county and from $4439 to $5736, or 29.2%, in the city. Unemployment in the area in 1971 was 3.1% of the work force, or only about half the national average of 6.1%.

In the five-year period ending in 1971, "effective buying income per household" increased 19%, while retail sales increased only 6.6%. This indicated, according to an expert, that the "conservative" people of the area were spending only a "small part" of the increase in income, and saving the rest.

There are two national banks, one state bank, and one savings and loan association in Winchester. These institutions operate, in addition to their main offices, a total of fifteen branches in the area. Five new branches have been approved, but are not yet open.

Farmers and Merchants National Bank, the appellant here and the lone opponent of Virginia Savings' application, is the largest financial institution in the area. It is a member of a bank holding company. Its assets grew from $22,027,000 in 1960 to $87,000,000 at the end of 1971. Its main office is located in the downtown section of Winchester, and it has seven branches in the area, two of which are within 1/2 mile of the location of Virginia Savings' proposed branch.

Shenandoah Valley National Bank is also a member of a bank holding company. It increased its assets from $13,736,000 in 1960 to $37,600,000 as of September 30, 1971. Its main office is located in downtown Winchester, and it operates three branches in the city, one of which is 300 feet from Virginia Savings' proposed branch.

The one state bank, Commercial and Savings Bank, was the only independent bank in Winchester at the time this proceeding commenced. It has since joined a holding company. Its assets increased from $7,924,997 in 1960 to $29,535,823 as of September 30, 1971. Its main office is in Winchester's downtown area, and it has four branches in the city, two of which are within 1 3/4 miles of Virginia Savings' proposed site.

The only savings and loan association in the area, Old Dominion Savings and Loan Association, commenced business in 1960. Its assets grew from $649,190 at the end of that year to $24,500,000 as of December 31, 1971. Its main office is located 2 1/2 miles, and its one branch office 1/2 mile, from Virginia Savings' proposed location. Old Dominion stated in writing that it did not oppose Virginia Savings' application.

In 1971, the four Winchester financial institutions made 796 real estate loans in the total amount of $16,100,000. One hundred other such loans totaling $2,000,000 were made by lending institutions outside the area. At the time of the hearing before the Commission, the four Winchester institutions had $20,000,000 available for real estate loans. Although Virginia Savings had not made any real estate loans

directly in the area, it had made 18 loans totaling $600,000 in nearby counties.

Interest on savings accounts was being paid at the highest legal rate by the Winchester institutions, with the banks' rates ranging from 4 1/2% to 5 3/4%, depending upon the type account, and Old Dominion Savings and Loan Association's rates ranging from 5% to 6%. Interest charged on real estate loans was "competitive," averaging 7 3/4% for 1971.

In the primary trade area of Winchester in 1971, there was a ratio of 1 banking unit to every 2300 people, considering the four main offices and the fifteen branch offices then open. The state-wide ratio was 1 banking unit to every 3873 people. However, the ratio of savings and loan units to population in Winchester and Frederick County was only 1 to 21,768.

The evidence presented by Farmers and Merchants consisted of the testimony of its president, a marketing expert, and a number of real estate operators. In addition to what has been included in our statement of the evidence, the gist of the opposition testimony was that another banking facility was not needed in Winchester.

Against this factual background, the Commision found that public convenience and necessity would be served by permitting Virginia Savings to open a branch in Winchester.[1] Farmers and Merchants says that this finding is erroneous and that the decision of the Commission should, therefore, be reversed.

▮ At the outset of our consideration of this case, we are met by an argument of Farmers and Merchants which must be laid to rest. The argument is that a provision of the former Constitution of Virginia, which stated that actions of the Commission "shall be regarded as prima facie just, reasonable and correct,"[2] was omitted when the Constitution was revised, effective July 1, 1971. This means, Farmers and Merchants asserts, that findings of the Commission are not entitled to the same weight in this court as they were formerly accorded.

We do not agree. We believe a presumption of correctness still attaches to actions of the Commission, the presumption surviving omission of the provision in question from the revised Constitution. The omission obviously was made merely to eliminate unnecessary

---

[1] Under Code § 6.1-171, now Code § 6.1-195.48, the Commission, "when satisfied that the public convenience and necessity will be served," may authorize a savings and loan association to establish a branch office.

[2] Former Section 156 (f).

language. So we approach resolution of this case with such a presumption in mind.

Another preliminary matter requires disposition. We do not have the same problem in this case that we had in *First Virginia Bank, National Association, Et Al. v. Commonwealth of Virginia, Et Al.*, 213 Va. 349, 193 S.E.2d 4 (1972). There we reversed the Commission's approval of a savings and loan branch in the town of Woodstock. We did so because it was apparent that one of the two commissioners there sitting had misunderstood our holding in *Mutual Savings* v. *Commonwealth*, 212 Va. 557, 186 S.E.2d 13 (1972). As a result of the misunderstanding, the commissioner took the position that because the applicant had presented a scintialla of evidence to support the application, he could not refuse approval and could not give weight to evidence introduced by opponents.

We stated in the *First Virginia* case that the *Mutual* decision had not changed existing law, but had reaffirmed a fundamental principle which had been recently reiterated in *Security Bank* v. *Schoolfield Bank*, 208 Va. 458, 461, 158 S.E.2d 743, 745 (1968). The principle is that we will not disturb a determination made by the Commission unless it is contrary to the evidence or without evidence to support it.

Here, it is apparent that, although only two commissioners participated in the decision, neither took the position that was taken in the *First Virginia* case. Instead, the opinion of the Commission shows that it considered and weighed the evidence produced by both sides and found the evidence to preponderate in favor of Virginia Savings. So our only concern here is whether the Commission's finding is contrary to the evidence or without evidence to support it.

It is true, as Farmers and Merchants points out, that the Commission observed in its opinion that Winchester was "abundantly supplied with financial institutions." But adequacy of existing banking facilities is only one of the criteria to be considered by the Commission in determining public convenience and necessity. Notwithstanding the adequacy of banking facilities generally, the Commission may still authorize the establishment of a branch banking unit if it finds that there is a need for a particular kind of service or for service in a particular location and that the financial soundness of existing institutions would not be jeopardized thereby. *Mutual Savings* v. *Commonwealth, supra; Security Bank* v. *Schoolfield Bank, supra.*

The record shows that savings and loan associations perform a different type service from what is performed by banks. These as-

sociations may legally pay higher rates of interest on savings accounts; they make real estate loans at higher ratios of loan amount to value, and they extend such loans for longer terms.

In the primary trade area of Winchester, only Old Dominion Savings and Loan Association, with only one branch office, is available to supply the public the particular services of savings and loan associations. Given the evidence before the Commission, showing the undeniably healthy financial and economic growth of the area, we think the Commission's finding that there was a public need for another savings and loan branch office in Winchester is sufficiently supported.

The Commission also found that the evidence did not support, or "even tend to support," a conclusion that the financial soundness of the existing banking institutions would be jeopardized by establishment of a new savings and loan branch office in Winchester. Considering the growth of the Winchester institutions in the period 1960 to 1971, with the banks competing side by side with a savings and loan association, we have no difficulty in agreeing with the Commission.

We affirm the Commission's approval of Virginia Savings' application.

*Affirmed.*