## Richmond

GRUNDY NATIONAL BANK v. MINER'S AND MERCHANT'S BANK AND TRUST COMPANY AND COMMONWEALTH OF VIRGINIA.

April 22, 1974.

Record No. 730861.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Harman and Poff, JJ.

*William G. Thomas (Donald M. Haddock; Thomas, Kent, Haddock & Sewell,* on brief), for appellant.

*Douglas G. Campbell; James W. Harman, Jr. (Harman & Campbell,* on brief), for appellees.

HARRISON, J., delivered the opinion of the court.

The State Corporation Commission, pursuant to the provisions of Code § 6.1-13, granted the Miner's and Merchant's Bank and Trust Company a certificate of authority to begin business in the Town of Grundy, Buchanan County, Virginia. Miner's application for the

certificate was opposed by Grundy National Bank and Cumberland Bank and Trust Company. Grundy National is here on an appeal of right. It alleges that the Commission erred in finding a public need for additional banking facilities in Buchanan County; in admitting the evidence of certain alleged expert witnesses; and in finding that the primary service area for the proposed banking facility was the whole of Buchanan County.

We find no error in the holding of the Commission that the community to be served by Miner's is the whole of Buchanan County rather than the Town of Grundy and its immediate environs. *See Citizens Nat. Bank* v. *Commonwealth,* 214 Va. 372, 200 S. E. 2d 535 (1973).

Intervenors objected strongly to the action of the Commission in admitting the testimony of Ormand Opitz and George Stuart Brady, Jr., who are professors at Southwest Virginia Community College. Opitz is the Dean of Students, and Brady is the Director of Cooperative Education. These men made a study of the economics of Grundy and Buchanan County at the request of those who sought to charter the Miner's bank. Their testimony was admitted over the objection of the intervenors who questioned the qualifications of Opitz and Brady as experts in the economics of bank marketing or any "vaguely related fields". Assuming these witnesses are primarily educators, as intervenors claim, and that neither possesses the experience or background of intervenor's expert, Dr. Michael J. Ileo, it was not reversible error for the Commission to have admitted their testimony. The Commission has considerable latitude in deciding the testimony it should admit or reject, and it is within its province to determine the weight that it should give such evidence. In making that determination the Commission considers the qualifications of any witness offered as an expert.

The record contains a great volume of statistical information concerning the Town of Grundy, Buchanan County and the general economic conditions of the area. This was submitted by witnesses for both Miner's and the intervenors, along with their opinions as to the need, or absence of need, for a new bank. It was the responsibility of the Commission to consider and evaluate all of the testimony. It was not bound to accept the opinions of the experts on either side as conclusive.

We now consider the evidence introduced, and arguments advanced, by advocates of the new bank and by the intervenors in support of their respective positions.

Buchanan is located in the extreme western section of Virginia, adjoining the States of Kentucky and West Virginia and the Counties of Dickenson, Russell and Tazewell in Virginia. Its land area is 508 square miles, and its population in 1970 was 32,071. The county is divided into 7 magisterial districts. Grundy is its only incorporated town and is the county seat of Buchanan. The town, located partly in North Grundy District and partly in South Grundy District, had a population of 2,054 in 1970.

Buchanan County now has two banks with a total of five banking offices. Grundy National began business in 1964 and has its main office and two branches in Grundy. The branches were opened in 1966 and 1973, respectively. Cumberland commenced operations in 1935 in Grundy and in 1950 opened a branch in Oakwood, about 12 miles from Grundy. It also maintains two offices in Dickenson County. The Commission noted that Grundy National increased its deposits from $10,101,439 in December, 1969 to $20,409,249 in December, 1972. During the same period Cumberland's two Buchanan offices increased from $24,632,767 to $37,189,331. The loans of Grundy National increased from $6,152,862 in 1969 to $13,796,008 in 1972. Cumberland's loans increased during the same period from $11,137,204 to $14,326,430.

Intervenors established the decline of population in Buchanan of 12.76% between 1960 and 1970; a 3.7% increase in households during that period as compared with a statewide increase of 29.4%; a 3% increase in retail sales as compared to a statewide average of 7.1%; and median household income in 1970 of $6,182 as compared to Virginia's median of $9,049. The opponents of the new bank also introduced evidence showing only 21% of the households in Buchanan in the $10,000 to $25,000 earning group as compared to a statewide average of about 40%. They point to the high unemployment rate in Buchanan between 1961 and 1971 of 6.7% as compared to a 3% average throughout the entire state. It was testified that the number of coal mines operating in the county declined from 996 in 1960 to 397 in 1971. During the same period mine production workers decreased from 6,576 to 4,925. Dr. Ileo estimated that 25% of the residents of Buchanan County received some form of financial assistance from federal, state or local government. It is Grundy National's contention that the economy of the Grundy-Buchanan County area is presently stagnant and the area is overbanked. It sees no need for an additional banking facility.

Those who advocate the establishment of a new bank in Buchanan paint a more optimistic picture. They point to the substantial and recent growth enjoyed by the intervenors; the increased demand for low sulphur coal of which Buchanan has an abundance; a resurgence of interest and activity within the coal industry; an increase in retail sales figures from $15 million in 1965 to $27 million in 1971; a rise in the average weekly income for Buchanan County workers to $158 in 1971 compared to the state average of $127; and to an increase in total personal income in the county from $54.8 million in 1966 to $87.4 million in 1970. They note that in the year 1972 the union-affiliated coal miners in the county received a total of $3.5 million in increased wages, and that a similar increase was due in 1973.

Counsel for Miner's argue that Buchanan County will experience an era of unprecedented growth and prosperity. They attribute this to numerous factors, including an expected upsurge in the tourist business because of its proximity to Breaks Interstate Park which is located partly in the county; to the Mountain Mission School in Grundy which attracts numerous visitors annually; to the conversion of U. S. Route 460 into a four-lane highway that will run from Tazewell County through Grundy and Buchanan and into the State of Kentucky; and to the construction of a new and elaborate shopping center and a second local hospital.

The Commission took note of testimony that there was a need in and around Grundy for an additional banking institution. This testimony was based in part upon the fact that from 1964 through 1972 Grundy National had an average loan-to-deposit ratio of 64.49% which the Commission regarded as being "very close to the point where a bank is considered to be 'loaned-up' ". The Buchanan office of the Cumberland Bank, 1969 through 1972, had an average loan-to-deposit ratio of only 42.25%—an admittedly conservative loan policy. The Commission observed that since September, 1972, the month in which Miner's filed its application, Cumberland became somewhat more aggressive in seeking loans. It also noted that during the first week of each month the intervenors cannot readily serve the customers who crowd into their lobbies; and that to help alleviate the situation Cumberland plans to build an additional facility which will offer drive-in windows and provide more office space. At the time of the hearing only one bank in the county had a drive-in window. Miner's plans to locate away from the downtown area of Grundy, to provide on-site parking and a drive-in window facility, to maintain extended business hours during the week and to be open on Saturdays.

Grundy National is a federally-chartered institution and Cumberland is a member of Dominion Bankshares Corporation, a statewide bank holding company. Miner's contends that there is a need in Buchanan for an independent, locally-owned, state-chartered bank.

The evidence established that Grundy is the focal trading point of Buchanan County. This is due largely to the topography of the county, the location of the public roads and the fact that it is the county seat. This is further evidenced by the location in Grundy of four of the five banking offices operated by the intervenors in Buchanan County. Grundy also attracts business from the eastern portion of Pike County, Kentucky, southern McDowell County in West Virginia, and from parts of Russell and Dickenson Counties in Virginia. Significantly, it was testified that the president of Cumberland lived in Dickenson, the president of Grundy National in Pike County, Kentucky, and the chairman of the board of Miner's in Mouthcard, Kentucky.

It is manifest that in making its decision the Commission attached great weight to the anticipated growth in the coal industry and to the rich deposits of desirable coal located in Buchanan County. It referred to the plan of Island Creek Coal Company to open five new mines in the county within the next five years resulting in approximately 2,000 additional employees. It was testified that the most recent mine opened by this company required an initial outlay of $30 million.

It suffices to say here that the Commission, charged with the responsibility of finding the facts and making a judgment, has found, in a contested proceeding and on conflicting evidence, that Miner's established a case for an additional banking facility in Buchanan County to be located in the Town of Grundy. A presumption of correctness attaches to its action, and we cannot say that its determination is contrary to the evidence or without evidence to support it. *Citizens Nat. Bank* v. *Commonwealth, supra; Farmers and Merchants Bank* v. *Commonwealth*, 213 Va. 401, 192 S. E. 2d 744 (1972); *First Virginia Bank* v. *Commonwealth*, 213 Va. 349, 193 S. E. 2d 4 (1972); *Security Bank* v. *Schoolfield Bank*, 208 Va. 458, 158 S. E. 2d 743 (1968).

The order of the Commission is

*Affirmed.*