## Richmond

SECOND NATIONAL BANK OF CULPEPER v. NEW BANK
OF CULPEPER AND COMMONWEALTH OF VIRGINIA.

August 28, 1974.

Record No. 730989.

Present, All the Justices.

*Flournoy L. Largent, Jr. (Largent, Anderson & Larrick,* on
brief), for appellant.

*Robert E. Stroud (McGuire, Woods & Battle,* on brief), for
appellees.

Per Curiam.

Second National Bank of Culpeper appeals a final order of the
State Corporation Commission finding a public need for an
additional banking facility in the Culpeper community and
granting New Bank of Culpeper a certificate of authority to
establish the facility.

The application of New Bank for such authority was filed in
December, 1972. It is opposed here by only one of the two banks
now located in Culpeper. On August 2, 1973, a majority of the
Commission, finding no public need, entered an order denying
the application. Within twenty-one days thereafter, on August

16, 1973, New Bank petitioned the Commission for a rehearing. The Commission granted a rehearing, suspended its order of August 2nd and set September 12th as the date for a further and limited hearing.

On October 26, 1973, the Commission entered a final order in which it unanimously denied a motion by Second National to dismiss the petition for rehearing and, by majority vote, granted New Bank a certificate of authority. A petition by Second National for a second rehearing was thereafter denied.

We first consider Second National's assignment of error which questions the authority of the Commission to grant a rehearing.

Article 9, Section 3 of the Constitution of Virginia, implemented by Code § 12.1-25, provides, in part:

"The Commission may prescribe its own rules of practice and procedure not inconsistent with those made by the General Assembly."

Pursuant to this authorization the Commission promulgated its Rule 13 which provides:

"Rehearings. All final judgments, orders and decrees of the Commission entered after a hearing (including administrative hearings) shall remain under the control of the Commission and subject to be modified or vacated for twenty-one days after the date of entry, and no longer. A petition for a rehearing may be filed within said twenty-one days. The filing of such a petition will not suspend the execution of the judgment, order or decree nor extend the time for taking an appeal unless the Commission, within said twenty-one days, enters an order granting a rehearing."

Second National argues that it was not given an opportunity to be heard on the granting of New Bank's petition for rehearing and points to Code § 12.1-28 which provides, in part:

"Before the Commission shall enter any finding, order, or judgment against any person, it shall afford such person reasonable notice of the time and place at which he shall be afforded an opportunity to introduce evidence and be heard."

The action of the Commission, on August 16, 1973, in suspending its order of August 2, 1973, and granting a rehearing to New Bank, did not constitute an order "against" Second

National. This order was not against anyone, and it was not a final order. Its only effect was to vacate the order of August 2, 1973; to return the cause to the breast of the Commission; and to restore all parties to the status they occupied prior to the entry of that order. Rule 13 clearly provides that the Commission shall retain control of its judgments, orders and decrees for twenty-one days after the date of entry, and that during such time it may modify or vacate any order or may entertain a petition for a rehearing. The Commission granted the petition "to afford New Bank every reasonable opportunity to develop a factually complete record". Its Rule permitting such action conflicts with no statute or rule of court affecting appeals to this court. It deprives no party of any right guaranteed by the Constitution or by statute. Second National participated fully at the September 12th rehearing, cross-examined New Bank's witnesses and presented testimony of its own.

Second National further argues that under existing statutes there is no right to a rehearing of a final judgment or order of the State Corporation Commission and that the Commission has no authority to prescribe a rule which permits a rehearing. It contends that the sole redress of an aggrieved party is an appeal to this court and points to Code § 12.1-39, which provides, in part:

> "The Commonwealth, any party in interest, or any party aggrieved by any final finding, decision settling the substantive law, order, or judgment of the Commission shall have, of right, an appeal to the Supreme Court *only*." (Emphasis added.)

We do not so construe the statute. The use of the word "only" in Code § 12.1-39 relates to the court to which appeals may be taken, and not to the action which an aggrieved party may take. It directs that appeals to final orders and judgments of the Commission be to the Supreme Court of Virginia only, and to no other court. It is not a limitation or restriction on proceedings before the Commission prior to final disposition by that body.

A majority of the Commission found that New Bank met all the requirements prescribed by Code § 6.1-13 for the issuance of a certificate of authority. This finding was made in a contested proceeding and on conflicting evidence. It is unnecessary that we detail the numerous factors which influenced the Commission's decision. The evidence shows that

the Town of Culpeper and the surrounding County of Culpeper have experienced substantial and increasing growth and that such growth continues. The population increased over 20% during the past decade; employment increased over 17.8% between 1962 and 1972, with emphasis in the manufacturing, trade and service occupations, and a decrease in agriculture employment; a number of major industrial and commercial establishments moved into the area; shopping centers developed; major expansion programs were inaugurated by local businesses and governmental agencies; and the adjusted gross income of its residents has increased 10% more than statewide increases during the five years ending 1971.

The Culpeper area is served by Second National and the Culpeper National Bank, both national banking associations organized more than seventy years ago. The Banks have experienced substantial and equal growth throughout the years, their combined assets being in excess of $65 million. Each bank has a main office and two branch offices and offers approximately the same services. Their total deposits increased more than 131% during the period 1960-1970 and 30% from 1970 to 1972. Their savings and time deposits increased 151% and 31% respectively during the same periods. The area is also served by a mortgage company with assets of $4 million and a savings and loan association with assets of $35 million.

There was expert testimony before the Commission estimating that the total bank deposits in Culpeper County would exceed $100 million by the end of 1976. The intervenor argued that New Bank's forecast of continued economic growth was overly optimistic and pointed to building "moratoriums" adopted by the County and Town of Culpeper during 1973. New Bank pointed out that the purpose of the moratoriums was to insure that future growth in the county be orderly and in a manner consistent with the public health and welfare of the community. It also pointed out that, despite the moratoriums, permits for dwelling units authorized during the first six months of 1973 totaled just 10 less than the number authorized during 1972.

The Commission has found from the record before it that there is need for an additional banking facility in Culpeper County, the area which, in fact, is served by existing banks and will be served by any new bank. *Grundy National Bank* v. *Miner's & Merchants B. & T. Co.*, 214 Va. 732, 204 S. E. 2d 277

(1974), *Citizens Nat. Bank* v. *Commonwealth,* 214 Va. 372, 200 S. E. 2d 535 (1973). The public need for such a facility is not, and need not be, an absolute or indispensable public need. *Security Bank* v. *Schoolfield Bank,* 208 Va. 458, 158 S. E. 2d 743 (1968). The Commission concluded that the establishment of a new bank would "stimulate the economy" of the town, county and area which it intends to serve, and would "stimulate competition" among the existing banks serving that market. These were proper factors to be considered. The Commission further found as a fact that the establishment of a new bank would not jeopardize the financial soundness of the existing banks.

The State Corporation Commission is the state agency which has supervisory powers over existing banks, and the authority to determine when a new banking facility shall be authorized. There is credible evidence to support, and a presumption of correctness attaches to, the Commission's determination that there is a public need for such a new banking facility in Culpeper. Its order granting the New Bank of Culpeper a certificate of authority to establish the facility is

*Affirmed.*