Richmond

COVINGTON NATIONAL BANK

v.

STATE BANK OF THE ALLEGHENIES,
STATE CORPORATION COMMISSION and THE
ATTORNEY GENERAL OF VIRGINIA

November 22, 1978.

Record No. 780633.

Present: All the Justices.

*Howard W. Dobbins (William A. Young, Jr.; Fletcher D. Watson; Wallerstein, Goode & Dobbins; Kostel, Watson, Carson & Snyder, on brief), for appellant.*

*Michael McH. Collins; William F. Schutt (William T. Wilson; J. Gregory Mooney; Collins, Wilson, Collins and Singleton, on briefs), for appellees.*

HARRISON, J., delivered the opinion of the Court.

The State Corporation Commission, pursuant to the provisions of Code §6.1-13, granted the State Bank of the Alleghenies a certificate of authority to begin business as a state-chartered bank in the City of Covington, Virginia. The Covington National Bank, First National Bank of Clifton Forge, Mountain National Bank (Clifton Forge) and First Federal Savings and Loan Association of Clifton Forge intervened in the proceeding before the Commission and opposed approval of the proposed bank. Covington National Bank, the only protestant bank that has its main office in Covington, is here upon an appeal of right.

While the appellant makes 14 assignments of error, it says that only three questions are presented:

1. Did the Commission misinterpret certain evidence and draw certain incorrect conclusions from the record?

2. Did the Commission rely upon certain improper evidence offered by State Bank and disregard certain proper evidence offered by the protesting banks?
3. Is the decision of the Commission contrary to the public interest?

The City of Covington, with an estimated 1975 population of 9,400, is located near the center of Alleghany County approximately ten miles west of the City of Clifton Forge, whose estimated 1975 population was 5,200. These two cities constitute the trading and financial center of a wide area which includes Alleghany County, and a portion of Bath, Craig and Botetourt Counties, as well as Monroe and Greenbrier Counties in West Virginia. In its application State Bank designated the City of Covington, the County of Bath and the major portion of the County of Alleghany as the primary trade area it proposed to serve. The protestants argued that the trade area should have excluded Bath County and included the City of Clifton Forge. They argued that had this occurred, the statistics offered in evidence by State Bank would have been more unfavorable to the granting of its application.

The Commission found no error in the applicant's designation of the trading area or community it proposed to serve. While a bank will customarily serve, to the greatest degree, the population in the immediate area which surrounds that bank, the term "community", as used in the statute, is not so restricted or delineated. In *Citizens Nat. Bank v. Commonwealth*, 214 Va. 372, 375, 200 S.E.2d 535, 538 (1973), this Court held that the word "community" "embraces not just the immediate physical area but the area whose population would be normally served by a bank if located at a particular site. A determination of the community or service area depends upon the facts in each case—population density, topography, the proximity of other towns, the transportation system, trade patterns of the area, community of interest and numerous other factors".

The land area of Alleghany County is 444.44 square miles and its population in 1975 was 11,600. The county and the two cities located therein are served by five banking offices and one thrift institution with two offices. They are: (1) The Covington National Bank, which has two offices in Covington and one in Alleghany

County; (2) First National Exchange Bank of Roanoke, which has a branch in Covington; (3) The First National Bank of Clifton Forge, which has its only office in Clifton Forge; (4) The Mountain National Bank, which has two offices in Clifton Forge; (5) The Bath County National Bank, which has its only office in Hot Springs; and (6) First Federal Savings and Loan Association of Clifton Forge, which has one office in Clifton Forge and one in Covington.

It appears to be a concession in the case that Clifton Forge is a city with adequate banking facilities and admittedly, for that reason, State Bank excluded Clifton Forge from its designated primary trade area. Clifton Forge presently has as many banks as Covington but with only half the population of Covington, while Bath County, with a population approximately equal to Clifton Forge, has only one bank. There was testimony that there are no large shopping centers in Bath County and that the people in that county, especially those in the Warm Springs Valley, come to Covington for their shopping, trading and banking. In fact, Covington National established that the volume of its loans and deposits originating in the Hot Springs area of Bath County was more than twice the volume of loans and deposits originating in Clifton Forge.

No single bank in the Covington-Clifton Forge-Alleghany-Bath area controlled a disproportionate share of deposits at the time of the hearing before the Commission. The First National Exchange Bank of Roanoke, with $31.1 million in deposits, controlled 28.9% of the area deposits; Covington National ranked second with $29.7 million or 27.7% of the area deposits; the First National Bank of Clifton Forge ranked third with $23.7 million, or 22.0% of the area deposits; The Mountain National Bank ranked fourth with $12.3 million, or 11.5% of the area deposits; and The Bath County National Bank of Hot Springs ranked fifth with $10.1 million, or 9.9% of the area deposits.

Competition among the banking institutions of the area was described by the Commission's economist, Nicholas C. Kyriakides, as not keen but on a friendly basis. His survey disclosed that all the banks enjoyed above average earnings and that at the time of the survey none, with the exception of the Bath County National Bank,

offered free checking accounts and Saturday banking hours. State Bank proposes to offer these as well as other expanded banking services.

Numerous witnesses appeared on behalf of the protestants and the applicant. As would be expected, these witnesses painted diverse pictures of the economy of Alleghany County and of the City of Covington. Witnesses for the protestants testified that the population of Covington had declined from 12,000 in the mid-1960's to 10,000; that employment at the Hercules plant was now 400 less than it was in 1967; and that no housing problem existed in the area. Their expert, Dr. Michael J. Ileo, expressed the opinion that the economic outlook for the Covington area was poor. He discounted the effect on the economy of the completion of I-64, pointing out that rural areas tend not to benefit from interstate highways. He stressed the downward trend of the population in the Covington area, the fact that the per capita income in Covington was below state average, and that the existing banking environment was "pretty competitive". He attributed the deposit growth of the banks in the area to internal rather than external conditions. Ileo felt that any resulting convenience to the general public from the new bank would be marginal at best, and that any increase in its deposit growth would be at the expense of existing banks rather than due to an expanding economy. He concluded that the establishment of an additional bank would be a very risky venture. He also voiced objection to including Bath County as a part of the primary service area of a new bank.

Witnesses called by State Bank painted a more optimistic picture. They pointed to the Chesapeake and Ohio Railway Company yard with its large payroll and to the two prosperous manufacturing plants, Westvaco and Hercules, which together employ 2,500 people and have an annual payroll of $57 million. Both institutions are planning substantial capital improvements. State Bank also refers to other major manufacturers located in the area, including Halmode Apparel located in Covington and Jane Colby located near Clifton Forge, both employing a predominately female work force, thereby providing "a second income" for many Covington area families. Halmode's work force has increased from 100 to 600 people during the first five years of its existence. There

was testimony that many new businesses have located and prospered in Covington in recent years, including McDonald's, Moore's Building and Supply, Windy's Burger House, Pizza Hut, Hardee's, Bonanza, Long John Silver's, K Mart, Kroger, Super X, Aide's Discount, Holiday Inn and Safeway.

It was represented that retail sales in the Covington general trade area grew from an average of $49 million in 1971 to almost $83 million in 1976, and that per capita income in the same area increased from $3,188 in 1971 to $4,742 in 1975. While the population declined in the years 1971 through 1974, State Bank says that the population has now stabilized and has begun to grow again. The population of the area is estimated to be 34,400 by 1980.

State Bank also says that Interstate 64 is to be completed in late 1978, with an estimated daily traffic count of approximately 5,000 vehicles; that U.S. Route 220 connecting Covington and Roanoke is being currently improved into a four-lane divided highway; and that the Gathright Dam, which impounds a 2,530-acre lake, will be completed in 1978, adding its recreational potential as well as the benefits that will come from eliminating the future threat of floods in the Covington area. Further testimony showed the construction by VEPCO of a pump storage project in Bath County at a cost of $875 million, a project which will furnish economic activity for approximately 2,500 employees over a seven-year period. A new regional hospital is to be completed between Covington and Clifton Forge in 1979 at an estimated cost of $16.5 million. The Dabney S. Lancaster Community college, located eight miles from Covington just off Interstate 64, has enjoyed a threefold growth in enrollment since the college was established in 1967. It trains local people for work in the area's industries and businesses.

State Bank attached much significance to an annual 9% growth in bank deposits in the Covington general trade area between the years 1971 and 1976, as well as the fact that the 1976 per capita bank deposits were $3,375, as compared with a state average of $2,819. The population per bank office in the trade area for 1976 was 4,000, as compared to a state average of 3,359.

It is obvious that in making its decision to grant State Bank's application for authority to do business, the Commission did not agree with appellant's pessimistic appraisal of the future of the

Covington-Clifton Forge area. The Commission found that it would be in the public interest for an independent, locally owned, state-chartered bank to be approved for the area. It observed: "We are informed that the last bank organized in Covington opened in 1900, and that this area has never had a state-chartered bank."

██ The Commission concluded that both the convenience to the public and competition would be enhanced by the entry of a new bank into the area. It commented on the new bank's proposal to operate on Saturdays, provide free checking, "bag pickup" service, and a later cut-off time on business day transactions.

The record reflects that approximately 680 individuals oversubscribed the capital stock in the new bank. The State Bank will open with $800,000 paid-in capital. No single individual bought more than 2,000 shares. Half of the subscribers gave Covington addresses and approximately 25% gave addresses located in the neighboring County of Bath, the City of Clifton Forge and the nearby West Virginia Counties of Monroe and Greenbrier. Consequently, three-fourths of the subscribers live within the primary or secondary trading area of the new bank.

██ The Commission took note of the 1976 amendment of Code §6.1-13(4). Formerly the Commission was required to ascertain that, in its opinion, there was "public need for banking facilities or additional banking facilities, as the case may be, in the community where the bank is proposed to be". The amendment now requires that the Commission shall ascertain:

"That, in its opinion, the public interest will be served by banking facilities or additional banking facilities, as the case may be, in the community where the bank is proposed. The addition of such facilities shall be deemed in the public interest if, based on all relevant evidence and information, advantages such as, but not limited to, increased competition, additional convenience, or gains in efficiency outweigh possible adverse effects such as, but not limited to, diminished or unfair competition, undue concentration of resources, conflicts of interest, or unsafe or unsound practices; . . ."

The Commission concluded, and we agree, that the test which it is required to apply under the amended statute is not substantially

different from that required prior to the amendment. It points to the elements listed in the full sentence added to the subsection which, the Commission said, it had intuitively considered, when pertinent, in administering the former standard. It noted that the General Assembly placed emphasis on applying the new standard from the public's point of view.

In the final analysis, when the State Corporation Commission determines that the public interest will be served by an additional banking facility in a community, it is saying that there is a need for such a facility, and that all things considered, the operation of a new bank, the increased competition it will generate, and the additional service and convenience it will provide the public outweigh any adverse effect the new bank might have on existing institutions and on the area involved.

█ This case presents no novel questions of law or complicated issues of fact. We do not agree with Covington National Bank that the Commission misinterpreted some evidence, relied upon improper evidence, or disregarded evidence offered by the protestant bank. On the contrary, it appears from its opinion that the Commission considered the evidence that had been introduced, the factors it is required by statute to consider and the factors which it historically and normally considers in new bank application cases, *i.e.*, the area of the community to be served, the population density of the area and its anticipated growth or decline, the state of the economy, the number and status of existing banking institutions, the need of the community for additional or different banking services, the need for and effect of competition on existing banks, the prospect for the successful operation of a new bank, and the interest of the people in the community in its organization.

It is the State Corporation Commission, and not this Court, that is charged by statute with the responsiblity of finding the facts. Here it has found in a contested proceeding and on conflicting evidence that the State Bank of the Alleghenies established a case for an additional banking facility to be located in the City of Covington. A presumption of correctness attaches to its action, and we cannot say that its determination is contrary to the evidence or without evidence to support it. *Old Dominion* v. *Colony Savings,*

219 Va. 586, 249 S.E.2d 167 (1978); *Grundy Bk. v. Miner's and Mer. Bk.*, 214 Va. 732, 204 S.E.2d 277 (1974); *Citizens Nat. Bank v. Commonwealth, supra; Farmers and Merchants v. Commonwealth*, 213 Va. 401, 192 S.E.2d 744 (1972); *First Virginia Bank v. Commonwealth*, 213 Va. 349, 193 S.E.2d 4 (1972); *Security Bank v. Schoolfield Bank*, 208 Va. 458, 158 S.E.2d 743 (1968).

The order of the Commission is

*Affirmed.*