Richmond

OLD DOMINION SAVINGS AND LOAN ASSOCIATION
v.
COLONY SAVINGS AND LOAN ASSOCIATION, ET AL.

November 22, 1978.

Record No.780634.

Present: All the Justices.

*Henry H. Whiting (Kuykendall, Whiting, Costello & Hanes,* on briefs), for appellant.

*A. L. Philpott; William F. Schutt (Philpott & McGhee,* on briefs), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Old Dominion Savings and Loan Association filed an application with the State Corporation Commission in 1977 to establish a branch at 6926 Peters Creek Road, N. W., near the City of Roanoke, in

Roanoke County. The application was opposed by Colony Savings and Loan Association, First Federal Savings and Loan Association of Roanoke, Peoples Federal Savings and Loan Association, and Southwest Virginia Savings and Loan Association (protestants). After conducting a hearing, the Commission entered an order denying the application. Old Dominion has appealed, contending that the Commission's ruling was contrary to the evidence and without evidence to support it.

The controlling statute, Code § 6.1-195.48, pursuant to which Old Dominion filed its application, provided in part as follows:

> "No savings and loan association may establish a branch office, except that the Commission, when satisfied that the public convenience and necessity[1] will be served thereby, may authorize an association to establish a branch or branches, . . . ."

In the order denying the application it was stated that a majority of the Commission (one Commissioner not participating) was "not satisfied" that the public convenience and necessity would be served by establishing the proposed branch "and does not so find". Thus, the Commission in effect ruled that Old Dominion had failed to carry the requisite burden of proof. The Commission's opinion, containing an analysis and evaluation of the evidence, affirmed the conclusion that the evidence failed to satisfy the Commission that the application should be approved.

There is no question as to the financial stability of Old Dominion. With its main office in Winchester, branches in Winchester, Purcellville, Woodstock, Harrisonburg, Staunton, Waynesboro, and Christiansburg, and assets of $86.1 million as of December 31, 1976, it has had an impressive record of growth and increasing profitability. Old Dominion has demonstrated that it can assume the investment risk required to establish the proposed branch.

---

[1] By 1978 amendment, inapplicable in this proceeding, the words "public convenience and necessity" were replaced by the words "public interest". Acts 1978, c. 683.

At the hearing before the Commission two witnesses testified for Old Dominion and two for the protestants. Robert B. Dale, Jr., Old Dominion's Executive Vice-President, testified that the proposed branch would be located in a well-developed and heavily traveled section of Roanoke County, north of the City of Roanoke. Because of the steady growth of the area he anticipated that the branch would attract enough customers from Botetourt County and the northeast portion of Roanoke County to ensure success.[2] He did not expect the branch, which would not offer any service not presently available in the area, to affect significantly the existing savings and loan associations.

Dr. Charles Meiburg, Director of the Tayloe Murphy Institute of the University of Virginia, testified as an expert witness for Old Dominion. Meiburg asserted that the growth rate of the Roanoke Standard Metropolitan Statistical Area (SMSA) was consistent with that of the state as a whole, that savings deposits in the area had shown steady growth, and that the prospects were good for continued growth, primarily in Roanoke and Botetourt Counties. He characterized the area as a "deficit area" in respect to availability of mortgage money, because approximately 25 percent of such money was being supplied by lenders outside the area. He found only two savings and loan association offices within the service area of the proposed branch, and both were operated by the same association. Because of the growth rate and changing residential patterns of the area, it was Meiburg's opinion that the public convenience and necessity would be served by the proposed branch, and that the branch would not cause undue harm to existing lending institutions.

Old Dominion also relied upon the report made by the Commission's staff economist recommending approval of the application. The economist reported that the proposed service area was heavily traveled and highly developed, that competition among local savings and loan associations was not acute, that mortgage interest rates in the Roanoke area were generally one-quarter of

---

[2] In Old Dominion's application it was estimated that the branch would accumulate total average deposits of $750,000 during the first year, $2,400,000 during the second year, and $4,300,000 during the third year.

one percent higher than those in other metropolitan areas, and that a new association "might" stimulate competition.

Dr. James R. Marchand, a consulting economist employed as an expert by the protestants, testified that the Roanoke metropolitan area had a lackluster record of demographic and economic growth in comparison with other SMSAs within the state. He asserted that, while there was strong competition for savings deposits between the savings and loan associations and commercial banks in the area, the savings and loan associations were less successful in competing with commercial banks in this area than in the other SMSAs. Thus, the Roanoke area savings and loan associations had the lowest proportion (33.2 percent) of total area savings deposits of any of the SMSAs and the Roanoke SMSA had the smallest population per financial institution office of any of the seven SMSAs in Virginia. Despite the large increase in financial institution offices between 1970 and 1975, however, the Roanoke SMSA ranked second in the state in savings deposits per office.

Marchand was of opinion that the primary service area[3] described by Meiburg as including all of northeast Roanoke County and three magisterial districts in Botetourt County[4] was too large. Marchand believed that geographical constraints would make it "costly time-wise" for many residents to get to the branch from distant parts of the proposed service area. He stated that the site of the proposed branch had formerly been occupied by a branch bank that had attracted only four hundred sixty-some thousand dollars in deposits during the period of approximately two years that it remained open. Marchand testified that in terms of population growth, household formation rates, growth in housing and housing values, and employment levels, the Roanoke SMSA was "among the bottom SMSAs" in the state. Noting that in the Roanoke SMSA there was a large number of financial institutions operating 81 commercial bank offices, 18 savings and loan association offices, and 11 mortgage company offices, it was his opinion, from the savings deposit and mortgaging point of view, that there was no

---

[3] "Primary trade area" is defined on the application form filed by Old Dominion as the area where more than 75 percent of deposits will originate.

[4] The application referred to one magisterial district in Botetourt County, but at the time of the hearing this district had been divided into three districts.

need for another savings and loan office in the north to northeast section of Roanoke County.

Raymond B. Firestone, President of the Roanoke Valley Board of Realtors and a lifelong resident of Botetourt County, was actively engaged in business in the primary service area of the proposed new branch. He testified that the area was "more than adequately served" by existing lending institutions, and that mortgage money was readily available. Firestone also testified that the proposed location of the office on Peters Creek Road near its intersection with Williamson Road (Route 11) would be inconvenient for many residents of the area because of traffic congestion and the availability of more direct routes into the City of Roanoke. According to Firestone, residents of the Daleville community in Botetourt County, where he resided, preferred to shop either in that community or in Roanoke City rather than in the vicinity of the proposed location of the Old Dominion branch.

In its opinion, the Commission found that in the Roanoke area the general economy, though healthy, was lagging in its rate of growth behind that of other metropolitan areas, that the number of financial institutions and offices was high relative to population, and that the number of competing savings and loan associations had doubled since 1970. The rapid expansion of financial institutions in the area suggested to the Commission that caution should be exercised in authorizing any new institution to enter that market. Acknowledging the sound financial status of Old Dominion, the Commission stated that the evidence in support of the application was devoted largely to the issue of feasibility, but that substantial evidence was produced which challenged certain basic assumptions upon which the applicant's case for feasibility depended and "diminished substantially" the benefit to the public which could be anticipated from establishment of the proposed branch.

The Commission pointed out significant deficiencies in Old Dominion's evidence. Old Dominion was unable to explain why it could project deposits far in excess of those attracted at the same location by a branch office of a nearby bank. The substantial growth in residential development in Roanoke County was not

occurring close to the proposed location. The primary trade area was, because of topography, shopping preferences, and alternative routes, such as Interstate Route 81 and Route 581 which afford easier access to the City of Roanoke, far smaller than the area Old Dominion had designated. It was the Commission's opinion that the proposed branch would serve the convenience of only those unspecified numbers of persons who lived or worked in close proximity to the location, and those who patronized nearby commercial establishments. Old Dominion failed to show, the Commission noted, that any substantial number of people desired or would use savings and loan services, or that adequate service was not already being provided. The Commission also found no evidence of any unsatisfied demand for mortgage money or any detriment to the public from the lending of money by institutions located outside the area. As to Old Dominion's allegation that its proposed branch would stimulate competition among the savings and loan associations, the Commission observed that Old Dominion proposed to, offer no service or rate not presently available, and that the record failed to show that there was an unsatisfactory competitive situation or that Old Dominion would alleviate such a condition if it did exist.

The Commission, acknowledging that the testimony of all the witnesses was credible, nevertheless concluded that substantial doubt concerning the application had been raised by the witnesses for the protestants, and that Old Dominion had not established justification for the proposed branch. Thus, the Commission found, on conflicting evidence in a contested case, against the applicant. The ruling of the Commission comes to us with the presumption that it is correct, and it can be set aside only if it is contrary to the evidence or without evidence to support it. *Farmers and Merchants* v. *Commonwealth*, 213 Va. 401, 405, 192 S.E. 2d 744, 747 (1972); *Security Bank* v. *Schoolfield Bank*, 208 Va. 458, 461, 158 S.E. 2d 743, 745 (1968). We cannot say that the determination made by the Commission in this case is contrary to the evidence or without evidence to support it. *See Covington Bank* v. *State Bank*, 219 Va. 566, 249 S.E.2d 163 (1978), *this day decided; Second Nat'l* v. *New Bank of Culpeper*, 215 Va. 132, 210 S.E.2d 136 (1974); *Grundy Bank* v. *Miner's and Mer. Bank*, 214 Va. 732, 204 S.E.2d 277 (1974).

Accordingly, we will affirm the order of the Commission.

*Affirmed.*