## Richmond

### Shenandoah Savings & Loan Association

### v.

### Front Royal Savings & Loan Association, et al.

January 11, 1980.

Record No. 790912.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Anthony F. Troy (D. Eugene Webb, Jr.; Mays, Valentine, Davenport & Moore, on brief), for appellant.*

*William F. Schutt; Charles E. Pikrallidas (Thomson, Pikrallidas & Schott, on briefs), for appellees.*

COCHRAN, J., delivered the opinion of the Court.

Two competing applicants, Front Royal Savings & Loan Association and Shenandoah Savings & Loan Association, each sought a certificate of authority from the State Corporation Commission to begin business in the Town of Front Royal, in Warren County. The Commission, by order dated November 21, 1978, determined that the public interest would be served by an additional savings and loan association in the town. After conducting a joint hearing upon the two applications, the Commission, by order dated February 21, 1979, approved the application of Front Royal Savings and denied the application of Shenandoah. In its appeal, Shenandoah challenges certain findings of fact and rulings of law made by the Commission, and contends that the Commission improperly evaluated certain evidence and improperly excluded other evidence.

Although the application of Front Royal Savings was filed several weeks before that of Shenandoah, the Commission decision, as stated in its opinion, was not based upon priority of filing. Acknowledging that the necessity of choosing between two qualified applicants presented a unique problem, the Commission analyzed the evidence and concluded that Front Royal Savings was "the better applicant in those respects most closely associated with the public interest", namely, location, financial position, and management. The Commission found it unnecessary to discuss a fourth factor, stockholder support in the community, because the evidence showed that the applicants had virtually equivalent support.*

Front Royal Savings, incorporated in 1968, had been denied a certificate of authority to conduct a savings and loan business in 1973, the Commission at that time finding that there was no public need for an additional savings and loan institution in the community. Front Royal Savings continued in existence, subject to a brief lapse of its charter in 1977 for failure to file annual reports, and derived rental income from property that it owned and upon which it proposed to con-

---

* On December 20, 1978, the date of the hearing, Front Royal Savings had 547 subscribers to 89,001 shares of stock, representing 414 households; 86% of the subscribers were from Warren County. Shenandoah had 544 subscribers to 97,187 shares, representing 440 households; 77.2% of the subscribers were from Warren County.

struct a building. This applicant also received money for stock improperly issued without establishing a capital surplus account; the issued stock was called in and replaced with subscriptions.

Front Royal Savings's proposed location was at the northwest corner of Commerce Avenue and Sixth Street in Front Royal, a site at the intersection of two major streets in the center of the downtown business district. A 1978 traffic count taken by the Department of Highways and Transportation showed that 11,450 vehicles passed this location in a period of 24 hours.

Shenandoah had acquired an option to buy or lease its proposed location on the east side of Commerce Avenue (Route 522), 400 feet south of its intersection with Route 55, a site outside the central business district and separated by a creek from a shopping center. The 1978 traffic count revealed that 4,150 vehicles passed this site in a period of 24 hours. Although projections of future development indicated that by 1995 Shenandoah's proposed location would generate a higher traffic count than that of Front Royal Savings, the Commission found that the Front Royal Savings location was accessible to more people presently and in the immediate future.

In assessing the relative financial positions of the applicants, the Commission relied upon the testimony of its economist, Nicholas Kyriakides. He reported that, while both applicants had overestimated their projected income, Front Royal Savings would incur fewer initial losses than Shenandoah because of the income derived from paid-in subscriptions since 1968, and would therefore achieve a profitable status sooner than would Shenandoah.

Comparing the respective management capabilities of the applicants, the Commission found that Front Royal Savings again was superior. Front Royal Savings had on its board of directors Frank H. Brumback, who was also chairman of the board of directors of The Bank of Frederick County, which did business in a nearby political subdivision. Front Royal Savings had also entered into an agreement, the Commission found, with James A. Hight, who would retire as chairman of the board of Bank of Virginia-Warren, after 30 years of experience in banking, to become chairman and chief executive officer of Front Royal Savings. The Commission ruled that the experience of these men constituted an asset that outweighed certain advantages which Shenandoah offered, namely, the election of its directors at a meeting of subscribers, the absence of any kinship or employment affiliation among directors, and a board of directors that included a high percentage of professional persons. In making this determination, the Commission considered, but found unpersuasive, evidence of certain flaws

in the operation of Front Royal Savings. Thus, the difficulties incident to the earlier unsuccessful application of this applicant were deemed to have been reduced to marginal relevance by the passage of time and changed circumstances. And the Commission concluded that the failure of Front Royal Savings to familiarize itself with and comply with policies recommended by the Federal Home Loan Bank Board was not such a serious deficiency as to jeopardize the applicant's chances of obtaining deposit insurance, or impugn the judgment of its organizers, or "weigh heavily" in the Commission's consideration of the evidence.

We find no merit in Shenandoah's assertion that the Commission erred in certain rulings of law. Shenandoah maintained that Brumback was ineligible to serve on the Front Royal Savings board because of the provisions of Code § 6.1-2.7 prohibiting a person from serving on the boards of two financial institutions simultaneously. But, as the Commission noted in its opinion, this statute contains an exemption making the law inapplicable until November 10, 1988, to any director serving on more than one board on July 1, 1978. Although Front Royal Savings was not doing business as a financial institution on July 1, 1978, it existed as a corporate entity on that date, and Brumback, who was then serving on its board and on the board of The Bank of Frederick County, was entitled to the statutory exemption.

Shenandoah argues that the Commission erred in excluding evidence of merger negotiations between the applicants. Shenandoah sought to introduce such evidence, not to show an effort to settle the controversy before the Commission, but to show bad faith on the part of the negotiators for Front Royal Savings. Shenandoah says that this evidence would have reflected adversely upon the fitness of Front Royal Savings's management. No proffer of the evidence was made, however, and counsel for Shenandoah merely stated that in the negotiations Front Royal Savings had demonstrated bad faith by insisting that Shenandoah subscribers be limited to five hundred shares of stock each when some had previously agreed to subscribe to several thousand shares each in Shenandoah. The Commission properly ruled that such evidence, disclosing only that there had been merger negotiations which had never been consummated, was irrelevant to the pending proceeding and was inadmissible.

The other errors assigned by Shenandoah are directed to the Commission's findings of fact and more particularly to the weight of the evidence. In challenging the Commission's rulings on these grounds, Shenandoah fails to carry the heavy burden cast upon it.

The applicable rules of law are clearly defined. There is a presump-

tion that the ruling of the Commission is correct, and it can not be set aside unless it is contrary to the evidence or without evidence to support it. *Old Dominion* v. *Colony Savings,* 219 Va. 586, 591, 249 S.E.2d 167, 170 (1978); *Farmers and Merchants* v. *Commonwealth,* 213 Va. 401, 405, 192 S.E.2d 744, 747 (1972). Here, the Commission found, on conflicting evidence, in favor of one applicant and against the other. There was evidence to support the Commission's findings of fact upon which it based its decision; evaluation of the weight of the evidence was a determination within the exclusive province of the Commission.

Accordingly, we will affirm the order of the Commission.

*Affirmed.*