# FREDERICK EUGENE TEASLEY

v.

# MONTGOMERY WARD & COMPANY, INC., and AETNA CASUALTY & SURETY COMPANY

No. 1896-91-1

Decided March 6, 1992

46

COUNSEL

(Samuel W. Meekins, Jr.; Cheshire I'Anson; Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., on brief), for appellant.

(Ralph E. Lawrence; White, Johnson, Lawrence & Huffman, on brief), for appellees.

OPINION

BENTON, J.—Frederick Eugene Teasley contends that the Workers' Compensation Commission* erred in denying benefits for a disability that resulted from an injury by accident or an ordinary disease of life arising out of and in the course of his employment at Montgomery Ward & Company, Inc. Teasley also contends the commission erred in refusing to allow him to introduce evidence of racially discriminatory conduct directed toward him by his supervisor to prove his state of mind at the time of the incident. We find no error and affirm the commission's decision.

---

* Formerly the Industrial Commission of Virginia. Effective October 1, 1991, Title 65.1 was recodified as Title 65.2. All references in this opinion are to Title 65.1, in effect at the time the Commission's decision was rendered in this case.

## I.

On March 19, 1990, Teasley saw an alternator lying against a garage door at the Montgomery Ward store where he was employed as an automobile mechanic. Montgomery Ward had a policy that no employee was to handle automotive parts without an invoice. Teasley, who had recently been reprimanded by his supervisor for possessing an automotive part without an invoice, informed the supervisor of the alternator. When the supervisor did nothing to remedy the situation, Teasley notified the security department. The security manager carried the alternator to his office and told Teasley to advise the supervisor that the alternator was in the security department. When Teasley informed the supervisor that the alternator was in the security department, the supervisor ordered him to retrieve it. Teasley was unsuccessful in locating the security manager and returned to his work assignment in the garage. The supervisor learned that Teasley had not retrieved the alternator and confronted him. During the course of that confrontation, a shouting match ensued. Teasley began to cry and fled to the employee's lounge.

Several employees tried to console Teasley without success. The head of personnel testified that when she tried to talk to Teasley, he approached her as if to attack her. Teasley's wife was contacted by security and came to the building; however, she could not coax Teasley out of the room. Teasley did not come out of the room until his parents arrived. His parents took him directly to a hospital.

Teasley was admitted to the Tidewater Psychiatric Institute where he came under the care of Dr. Palat. Dr. Palat diagnosed Teasley's condition as major depression, single episode, post-traumatic stress disorder and an obsessive compulsive personality. Teasley was hospitalized as an inpatient on two occasions for periods of two to three weeks each. In between those times, he was enrolled in a hospital program that allowed him to stay at home and attend hospital activities during the day.

The evidence proved that the supervisor had been assigned to Teasley's department for a year. During that year, Teasley and the supervisor had numerous disagreements concerning issues such as vacation dates and work assignments. Teasley had twice "gone over the head" of this supervisor to resolve these issues. Teasley

testified that, during the confrontation with his supervisor, he began to feel that he was going to lose his job, which he had held for seventeen years. Teasley also testified that as the supervisor continued to press him during the confrontation, things started "running through my head," and "the next thing I remember I woke up in the psychiatric ward." Teasley stated that as the supervisor pressed him, he felt like "killing him and killing myself."

Dr. Palat explained that the obsessive compulsive personality is simply part of Teasley's personality type and not necessarily related to work. However, Teasley's major psychological problems, according to Dr. Palat, were precipitated by something that "happened at work" which Teasley "couldn't tolerate" resulting in an "impulse to kill somebody." The evidence proved that this "was the first time [Teasley came] very close to that [kind of impulse] and he had to run away from it, lock himself up in a room and feel that he needed to kill himself." According to Dr. Palat, Teasley was both homicidal and suicidal when the incident occurred and in the subsequent weeks of hospitalization. Dr. Palat diagnosed this problem as post-traumatic stress disorder due to a single causative incident.

## II.

A claimant establishes an injury by accident if there is "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." *Chesterfield County v. Dunn*, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990). When an injury is strictly psychological, it "must be causally related to a physical injury or be causally related to an obvious sudden shock or fright arising in the course of employment." *Id.* at 477, 389 S.E.2d at 182. Teasley claims that his disability is compensable as an injury by accident as defined in Code § 65.1-7 (now Code § 65.2-101) and there could have been no cause for post-traumatic stress disorder but the workplace incident.

It has long been the rule in Virginia that a nervous condition resulting from a sudden shock or fright without physical impact may be compensable. *See Burlington Mills Corp. v. Hagood*, 177 Va. 204, 13 S.E.2d 291 (1941). Likewise, an emotional problem resulting after a physical injury may be compensable. *E.C.*

*Womack, Inc. v. Ellis*, 209 Va. 588, 166 S.E.2d 265 (1969). However, purely psychological disability resulting from disagreements over managerial decisions and conflicts with supervisory personnel that cause stressful consequences which result in purely psychological disability ordinarily are not compensable. The commission has consistently held that conflicts of that nature, standing alone, which result in psychological disability are not sufficient to constitute an injury by accident. *See Turnage v. Retreat Hosp.*, 68 O.I.C. 105 (1989); *Mitchell v. City of Newport News*, 65 O.I.C. 126 (1986). Teasley points to no cases in which this Court or the Supreme Court has ruled that stress resulting from dissatisfaction with management or fear of termination or demotion solely provides a basis for awarding compensation.

It is undisputed that a history of poor relations and a shouting match between the supervisor and Teasley immediately preceded Teasley's flight to the employee's lounge and subsequent hospitalization. Despite that incident's unfortunate effect on Teasley, the commission reasonably determined that his disability cannot be treated as a compensable injury under Code § 65.1-7 because it did not result from a "sudden shock or fright" or a physical injury. The evidence before the commission does not prove or tend to prove that the argument between Teasley and his supervisor involved anything more than a disagreement over Teasley's handling of the matter concerning the reporting of the alternator. We find no error in the commission's decision.

### III.

The commission found that post-traumatic stress disorder is an "ordinary disease of life to which the general public is exposed outside of the employment." The commission also found that Teasley's disorder was not one which arose out of and in the course of his employment. "The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." *Ingersoll-Rand Co. v. Musick*, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989). To show that an ordinary disease of life is compensable under Code § 65.1-46.1 (now Code § 65.2-401), Teasley had to prove that:

> [T]he disease (1) arose out of and in the course of employment, (2) did not result from causes outside of employment, and (3) follows as an incident of an occupational disease, is an infectious disease or contagious disease contracted in the

course of employment, or is characteristic of the employment and was caused by conditions peculiar to the employment.

*Island Creek Coal Co. v. Breeding,* 6 Va. App. 1, 11, 365 S.E.2d 782, 788 (1988). It is not sufficient that employment aggravated the problem. *Ashland Oil Co. v. Bean,* 225 Va. 1, 3-4, 300 S.E.2d 739, 740 (1983).

The evidence proved that Teasley had numerous sources of stress in his life that may have contributed to his condition. Teasley told a nurse that he "used to have thoughts about ending [his] life in the past but now . . . want[ed] to get [his] head screwed on straight." Notes taken by the medical staff when Teasley was admitted to the hospital indicated he had had suicidal thoughts on previous occasions, along with a history of violent outbursts. There had been several personal incidents when he had spoken of "blowing his brains out" to family members. The medical testimony established. he suffered from a low self-esteem, a sense of inadequacy, and inferiority. His first marriage ended in divorce. The testimony also proved that Teasley was upset by his ex-wife's denial of visitation with the children born of that marriage. Moreover, his second marriage has been a source of stress in his life. In addition, his parents were both in very poor health.

We conclude that his record contains credible evidence to support the commission's findings. At best, Teasley proved only that his employment aggravated his condition. The commission's findings of fact are conclusive and binding on this Court. Code § 65.1-98 (now Code § 65.2-706); *Birdsong Peanut Co. v. Cowling,* 8 Va. App. 274, 279, 381 S.E.2d 24, 27-28 (1989).

## IV.

Finally, Teasley claims the commission erred in refusing to allow him to present evidence of racially discriminatory conduct directed toward him. He contends that such evidence would have proved a connection between his disability and his employment, thus, satisfying the test of arising out of and in the course of his employment.

■ Long ago, the Supreme Court of Virginia ruled that "the Work[ers'] Compensation Act is exclusive in so far as it covers the field of *industrial accidents,* but no further." *Griffith v. Raven Red Ash Coal Co.,* 179 Va. 790, 798, 20 S.E.2d 530, 534

(1942)(emphasis added). More recently, in *Morris v. Morris*, 238 Va. 578, 385 S.E.2d 858 (1989), the Supreme Court reaffirmed that view.

> It is apparent from the language employed by the drafters of the Act that it was originally intended to provide coverage for the most frequently recurring kinds of industrial accidents, *e.g.*, injuries immediately resulting from hazards of the workplace such as blows from falling objects; injuries from contacts of the body with operating machinery or corrosive chemicals; falls from ladders, catwalks, and the like. That was evidently the understanding generally shared by the bench, the bar, and the Industrial Commission for the first quarter-century of the Act's application, because no case involving a gradually incurred injury came to this Court until *Aistrop v. Blue Diamond Coal Co.*, 181 Va. 287, 24 S.E.2d 546 (1943). Even then, the question was presented in a tort case by a plaintiff who argued that such injuries were outside the purview of the Act, rather than within it.

> \* \* \*

> The employer demurred, contending that workers' compensation was the sole remedy. The trial court sustained the demurrer, holding that the motion for judgment alleged an "injury by accident" with the Act. We reversed, holding that the Act did not cover injuries gradually incurred, and that common-law remedies were still available for such claims.

*Id.* at 585, 385 S.E.2d at 862. Claims of race discrimination have never been considered to fall within the generic term "industrial accidents." Thus, common law remedies are still available for such claims. *Cf. City of Richmond v. Braxton*, 230 Va. 161, 165, 335 S.E.2d 259, 262 (1985) (sexual assault committed by an employee upon another employee "was in no way in furtherance of the employer's business" and was not within the exclusive purview of the Act).

The commission determined that Teasley's condition was neither caused by a sudden shock or fright nor resulted from a physical injury as required under Code § 65.1-7 (now Code § 65.2-101). Evidence of a pattern of racial discrimination does not affect this determination. Evidence of race discrimination is also

not relevant to a determination whether Teasley's injury is an ordinary disease of life which arose out of or in the course of employment. The commission determined that the multiple sources of stress in Teasley's personal life made it impossible to find that his affliction arose solely from the incident at work. Evidence of racially discriminatory behavior could not resolve this issue. The commission may validly exclude evidence which is irrelevant. *See Shenandoah Sav. & Loan Ass'n v. Front Royal Sav. & Loan Ass'n*, 220 Va. 718, 261 S.E.2d 325 (1980); *City of Norfolk v. Chesapeake & Potomac Tel. Co.*, 192 Va. 292, 64 S.E.2d 772 (1951). We will not disturb its decision to do so here.

*Affirmed.*

Coleman, J., and Willis, J., concurred.